**C.E.S., Jr., Respondent,**

v.

**D.D.S., Appellant.**

No. 56188.

Missouri Court of Appeals, Eastern District, Division Three.

Jan. 23, 1990.

 

Morton R. Newman, Robert A. Margulis, St. Louis, for appellant.

Marion F. Wasinger, Hannibal, for respondent.

GRIMM, Judge.

In this dissolution case, D.D.S. (wife) appeals. She contends that the trial court erred in awarding her an inadequate amount of (1) child support, (2) maintenance, and (3) attorney fees. We modify the amount of child support, and affirm.

C.E.S. (husband) and wife were married in 1970. Their first child, C., was born in May, 1971. Their second child, R., was born in February, 1973. When R. was a young child, he was diagnosed as having muscular dystrophy.

Their third child, M., was born in August, 1980. In March, 1987, their fourth child, K., arrived. K. also has muscular dystrophy, although in the early stages. He falls down "[p]retty frequently"; his "legs just give out under him."

Husband has custody of C., the oldest child; the other three children live with wife. At the time of the hearing, R. was almost 16 years old. Although totally disabled, R. does attend high school.

Husband is a partner in a law firm. His average income, before taxes, for 1986 and 1987 was $73,800; after taxes, it averaged $55,133. Wife, a full-time homemaker, last worked outside the home in 1977. Her only income is $150 per year from stock dividends. Husband was ordered to pay monthly child support of $1,173.00 and maintenance of $700.00.

I

Wife first contends that the trial court erred and abused its discretion in awarding her only $1,173.00 per month child support.

Husband testified that monthly expenses for his oldest child and himself are $2,981.00. Wife testified that the monthly expenses for the other three children and herself are $3,250.00. Combined, these expenses would exceed husband's average monthly income after taxes.

At trial, husband testified that monthly child support of $1,172.63 would be appropriate. This sum was computed based on guidelines and a table in Missouri Family Law, § 13.39 (Mo.Bar 3d ed. 1982). In addition, husband said he would maintain his major medical insurance through the Missouri Bar Plan. This plan has a $700.00 deductible.

Husband suggested that the parties split any medical expenses not covered by insurance. In 1986, those expenses were about $3,000.00; in 1987, $5,400.00. In 1988, non-covered medical expenses were averaging $200.00 per month.

The use of a guide in setting child support is helpful. *McM. v. McM.*, 506 S.W.2d 14, 17 (Mo.App.W.D.1974). However, "[i]n using such a guide, it must also be remembered that the special needs of some children require the granting of larger child support awards." Missouri Family Law, § 13.39 (Mo.Bar 3d ed. 1982). Here, the special needs of these children require a larger child support award than that provided by a guide.

In 1988, The Missouri Bar published the fourth edition of Missouri Family Law. It does not contain the table used by the trial court that appeared in the 1982 edition.

Rather, it contains Missouri Child Support Guidelines developed by a task force. These guidelines were developed in response to 1984 Pub.L. 98–378, better known as the Child Support Enforcement Amendments. 1 Mo. Family Law, § 14.15 (Mo.Bar 4th ed. 1988).

In 1989, the General Assembly directed the Supreme Court of Missouri to establish guidelines for child support. § 452.340.7, RSMo Supp.1989. On October 2, 1989, Rule 88.01, Presumed Child Support Amount, was adopted.* That Rule may be followed until April 1, 1990, and must be followed after that date.

The Rule 88.01 worksheet, as well as its directions, are similar, but not identical, to the worksheet and directions in the fourth edition of Missouri Family Law. The "Schedule of Basic Child Support Obligations" in Rule 88.01 is identical to that in the fourth edition of Missouri Family Law. Based on husband's gross income, that schedule indicates child support of $1,352.00 per month for the three children would be appropriate.

The Rule 88 calculation is helpful, but not decisive. For here we have the tragic and unusual circumstance that two of the three children in wife's custody have muscular dystrophy. As a result, additional expenses for their care are incurred.

If we were to remand this case to the trial court, in all probability, application of the Rule 88.01 Schedule of Basic Child Support Obligations would be mandatory. In view of this and Rule 84.14, remand is not necessary. Instead, in compliance with Rule 84.14's direction to enter "such judgment as the court ought to give," child support is set at $500.00 per child per month.

In the Directions for Use of the Worksheet contained in Rule 88.01, the Comments section recognizes that "no schedule can encompass all of the necessary costs of child rearing or unusual circumstances." The Comments state that "extraordinary medical ... expenses are not factored into the schedule." The children here have extraordinary medical expenses that are not included in the monthly support award.

The trial court ordered husband to keep his medical insurance on himself and the children. It also ordered that any "items not covered by insurance shall be divided equally between the parties, including any insurance deductible on the minor children." The children's extraordinary medical expenses require us to modify this order to provide that any "items not covered by insurance shall be paid by husband."

II

For her second and third points, wife contends that the trial court abused its discretion in awarding only $700.00 per month for maintenance, and $1,500.00 attorney fees. These orders are supported by substantial evidence and an extended discussion would have no precedential value. Rule 84.16(b). Points denied.

The judgment of the trial court, as modified, is affirmed.

SATZ, P.J., concurs.

SMITH, J., dissents in separate opinion.

SMITH, Judge, dissenting.

I respectfully dissent from that portion of the majority opinion affirming the trial court's award of maintenance. I concur in the issues involving child support and attorney's fees.[1]

At the time the couple were married husband was in the service. Wife worked for approximately a year after the marriage until the birth of their first child. Husband utilized veteran's benefits to attend college in St. Louis on a full-time basis and then subsequently took full-time employment

---

* 775–776 S.W.2d XXX (Missouri Cases).

1. At the time of oral argument I believed, as I still do, that the child support should be set at the schedule amount of $1,352.00 per month plus all medical expenses. I do not believe wife's support should be dependent upon her using the child support to meet her fixed expenses particularly in this case where the long term continuation of that support for at least two of the children is problematical.

and continued his education at night, obtaining a history degree. He was accepted at two law schools but was unable to attend because of finances. He worked for a couple of years and saved one or two thousand dollars. With that money, some additional veteran's benefits and $60,000 his wife received as an inheritance, he was able to move his family and attend law school in Spokane, Washington. Following graduation he worked for a law firm in Washington and then relocated to Hannibal. Wife's inheritance was used up while husband attended law school.

At some time during the marriage wife worked for a dentist for approximately a year, for an insurance company as a clerk for a similar time, and as a babysitter for a comparable time. She is a high school graduate with some additional college work. She has not worked outside the home since 1977.

In the dissolution wife received as nonmarital separate property stock having a value of $1,520. She received as marital property $2,100 in income producing property. The remainder of the marital property she received is non-income producing. The major item is the family home worth $80,000 with indebtedness against it of $57,000. Of that amount $20,000 represents a loan which husband and wife made from wife's mother. The remainder is a debt of husband and wife to a financial institution. The decree requires wife to pay the indebtedness on the house and continues husband's ownership in the property until the debts are paid or until husband's "name is removed from the indebtedness obligation." Payments on the indebtedness are $500 per month. Wife received $700 as maintenance. Obviously, wife's payment of the indebtedness serves to reduce and eventually eliminate a debt of husband. Her payment of taxes and insurance on the home serves to protect husband's ownership interest in the property which in turn serves to protect him from having to repay the indebtedness he incurred.

Husband received physical property of nominal value and his interest in the law partnership of which he is a member. The trial court put no value on that asset. Husband's after tax income is $55,000 annually. The court ordered the wife to execute the necessary papers so that husband can claim the three children in her custody as dependents. He will be able to claim the maintenance payments as a deduction. That deduction will presumably increase his net income after taxes. Husband's expense statement indicated his need for $2,900 monthly for himself and his eldest son. The eldest son was 17 at the time of trial and is now approaching 19. He does not intend to attend college and the record does not indicate when he was to graduate from high school. His grades for one semester period were three F's, a D and a C. He had been suspended from school for a short period because of an altercation with a teacher. We are unable to determine from the record whether this son is now emancipated, Sec. 452.340 R.S.Mo.1988 Supp., but clearly he will be within three years.

Wife's expense statement as modified by her testimony at trial, reflected a need for $3,250 per month for she and the three children. The trial court awarded her a total of $1,873 per month, plus certain medical and insurance benefits of undetermined amount as maintenance and child support. It based its maintenance decision on several factors.

First it concluded that while wife's time is limited for employment, she does have the skills to seek active employment at least on a part-time basis. Mother has the custody of three children, two with a progressively disabling disease, muscular dystrophy. The eldest of these children, 15, is confined to a wheelchair with no use of his muscles. He is able to attend school. He cannot feed himself, go to the bathroom by himself, bathe, scratch his head, or do any normal physical activities. On occasions he must be brought home from school to utilize the bathroom or to be cleaned up. He must be turned two or three times a night. Wife provides all of these services. The youngest child is two and is exhibiting the early symptoms of his disease. The record is devoid of evidence of the availability of employment for a woman of limited em-

ployment background who must be home before her 15 year old leaves for school and before he returns from school and who must on occasions be home on short notice when the school notifies her of a problem. The record is similarly devoid of evidence of the availability of day care facilities for a two year old displaying the early symptoms of muscular dystrophy or the cost of such care if available. There is no evidence of the amount wife could earn other than her testimony that it would be at or near the minimum wage. ·

Sec. 452.335, R.S.Mo.1986, provides that the court may grant maintenance if it finds the spouse lacks sufficient property to provide for her reasonable needs and is unable to support herself through appropriate employment *or* is the custodian of a child whose conditions or circumstances make it appropriate that the custodian not be required to seek employment outside the home. Wife is the custodian of not one, but two children meeting that test. It would be difficult indeed to find a situation more clearly making it inappropriate for the wife to seek employment outside the home. How she alone manages what she presently must do both day and night is difficult to imagine.

Secondly, the court stated it took into account the reasonable requirements and costs to raise and educate a family of three children. This is a somewhat strange assertion as the court concluded that it took substantially more for husband to support himself and a soon to be emancipated son than it took for wife to support herself and three children, two seriously ill.[2] The maintenance award to the wife allows her a net of less than $200 a month to live on after she pays the indebtedness, taxes and insurance on the home.

Thirdly, the trial court took into account "the requirement of a lawyer to maintain his standard of living." This parallels the trial court's remark during trial that husband "has to maintain his professional sta-

tus." I am aware of no doctrine of law which requires or allows a court to see that that standard of living is maintained by forcing the former wife into a poverty level of subsistence. Husband's income is sufficient to provide for his reasonable needs and still provide wife with an acceptable standard herself. The child support is for the children and will be reduced as they are emancipated or die. Given the health of two of the children it is difficult to consider the child support as a continuing, even short-term, source for wife's general expenses. The wife will for some time be confined to looking after the children, and as to two of the children, that will extend beyond their adulthood if they survive that long. Wife was thirty-nine at the time of trial and in view of the age of the youngest child it is quite possible she will be nearly sixty before she can enter the job market.

The court also discounted the $20,000 indebtedness owed to wife's mother in establishing the amount of maintenance. *Husband* and wife borrowed the money to purchase the house. It is an indebtedness which wife's mother is entitled to have repaid. There is nothing in the record to indicate that mother is not expecting repayment. There is no valid legal reason for treating this obligation as if it did not exist. It is not a basis for reducing wife's maintenance award.

The court further justified its awards on the basis that the wife was receiving a disproportionate amount of the marital property. Virtually none of it is income-producing. The only income producing property is the partnership interest which husband received. Further the court failed to even consider, apparently, that husband's capacity to earn the amount of money he does is in large part the result of wife's utilization of her inheritance to finance his legal education.

Wife has fully carried her share of the burdens of this marriage. She has devoted

---

**2.** Husband's expense figures are at least suspect. Shortly following the separation he and the eldest son moved in with a woman he intends to marry and her three children. He pays the housing obligations on her house, the utilities,

and some of the food. The record does not establish what percentage of the expenses of this six person unit husband provides, four of whom he has no obligation to support.

herself to her children and their care under extremely difficult circumstances. She has utilized her personal money to provide her husband with a lucrative career. She has nothing but grief, suffering and a heavy burden to bear for the foreseeable future. The job she currently has consumes 24 hours a day, 365 days a year. Husband's only complaint was that wife refused to actively socialize in his business and bar activities although she did participate in his therapy sessions to correct his alcohol problem. I find the award of maintenance penurious and unjust and totally out of keeping with the statutory guidelines for dissolution actions. I would order it raised to at least one thousand dollars per month.